IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN B. HARRIS,<br><br>    Plaintiff,<br><br>vs.<br><br>GRANT L. GENTILE, Police Officer #2140; JOHN H. LOPEZ, Police Officer #1955; NICOLAS YANEZ, Police Officer #1506; GEOFFREY A. STRONG, Police Officer Y631; and BROCK GENTILE, Police Officer #2391; and LANCE GORDON,<br><br>    Defendants. | **8:20CV17**<br><br>**MEMORANDUM AND ORDER** |

  This matter is before the court on the parties' cross-motions for summary judgment (filings 42, 46 & 48) and Plaintiff's motions for default judgment against Defendant Lance Gordon (filings 32 & 35). For the reasons that follow, Defendants' motions for summary judgment (filings 42 & 48) are granted, and Plaintiff's Motion for Summary Judgment (filing 46) and motions for default judgment (filings 32 & 35) against Defendant Lance Gordon are denied.

## I. BACKGROUND

  Plaintiff Kevin B. Harris ("Plaintiff") originally filed this action on January 13, 2020, while he was incarcerated. (Filing 1.) The court granted him leave to proceed in forma pauperis on January 28, 2020, also while he was incarcerated. (Filing 7.) Plaintiff has since been released. (*See* Filing 57.) Upon order of the court (filing 52), Plaintiff has paid the full amount of the court's filing fee.

This case involves Plaintiff's 42 U.S.C. § 1983 Fourth Amendment claims against Defendants for unlawful arrest and unreasonable search and seizure of his property. (Filings 12 & 13.) In his Amended Complaint, Plaintiff alleges that, after Defendant Lance Gordon attacked him at his residence, City of Omaha Police Officers Grant L. Gentile, Brock Gentile, John H. Lopez, Nicolas Yanez, and Geoffrey A. Strong unlawfully arrested him and subjected his home to an unreasonable search and seizure. (Filing 12 at CM/ECF pp. 4, 6.) Plaintiff's Amended Complaint alleges that Defendant Gordon acted jointly with the police to have Plaintiff unlawfully arrested.[1] (*Id.* at CM/ECF p. 8; Filing 13 at CM/ECF p. 2.)

In its earlier Memorandum and Order, the court allowed the following claims to proceed: (1) unlawful arrest against all Defendants in their individual capacities; and (2) unreasonable search and seizure of property against Defendants Grant Gentile, Brock Gentile, Lopez, Yanez, and Strong in their individual capacities. (Filing 13 at CM/ECF p. 6.)

Defendant Strong filed his Answer (filing 15) on June 26, 2020, and Defendants Grant Gentile, Brock Gentile, Lopez, and Yanez (collectively, "City Defendants") filed their Answer (filing 31) on September 11, 2020. Defendant Gordon did not file an answer or otherwise respond to the Amended Complaint, and the Clerk of Court entered a default against Gordon on September 9, 2020. (Filing 30). Plaintiff then filed two motions for default judgment. (Filings 32 & 35.) On November 4, 2020, the court ordered Defendant Gordon to respond to Plaintiff's motions on or before December 4, 2020. (Filing 37.) Defendant Gordon failed to respond to the court's order. On December 21, 2020, the court ordered Plaintiff's

---

[1] The Amended Complaint alleges that Defendant Gordon "was allowed to have [Plaintiff] arrested acting with police as under color of law after attacking [Plaintiff] at [his] residence." (Filing 12 at CM/ECF p. 8.) In its earlier Memorandum and Order, the court construed this allegation to mean that Defendant Gordon was a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). (Filing 13 at CM/ECF p. 2.)

motions for default judgment against Defendant Gordon be held in abeyance until this matter has been adjudicated as to all Defendants. (Filing 38.)

Defendant Strong filed his Motion for Summary Judgment on April 27, 2021 (filing 42), and City Defendants filed their Motion for Summary Judgment on June 10, 2021 (filing 48). Plaintiff has not responded to either summary judgment motion. Instead, on May 3, 2021, Plaintiff filed his own Motion for Summary Judgment. (Filing 46.) Defendant Strong and City Defendants have not responded to Plaintiff's Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986); *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact

is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact.[2] *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

### III.  SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[2] This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018).

4

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining in original). "The statement must not contain legal conclusions." *Id.*

The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion for summary judgment." NECivR 56.1(1)(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (underlining omitted).

### IV. EVIDENCE PRESENTED

In this case, Defendant Strong's brief (filing 44) in support of his Motion for Summary Judgment and City Defendants' brief (filing 50) in support of their Motion for Summary Judgment each contain a separate statement of material facts,

5

consisting of numbered paragraphs with proper references to the record. The documents referenced in the two briefs include: the declarations of Defendant Strong (filing 43-1) and City Defendants—Grant Gentile, Brock Gentile, Lopez, and Yanez (filings 49-1, 49-2, 49-3 & 49-4); a foundational affidavit (filing 49-5) for the declarations of City Defendants; copies of court documents in Plaintiff's state court criminal case (filing 43-2 at CM/ECF pp. 2-11); and a foundational affidavit for the court documents (*id.* at CM/ECF pp. 1-2). While Plaintiff's failure to file opposing briefs is not considered a confession of the motions, *see* NECivR 7.1(b)(1)(C), his failure to controvert Defendant Strong's and City Defendants' statements of material facts is considered an admission for purposes of deciding the motions. See NECivR 56.1(1)(b)(1); Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

Plaintiff did not file a separate brief in support of his own Motion for Summary Judgment. *See* NECivR 7.1(a)(1). Additionally, Plaintiff's motion does not include a separate statement of material facts. *See* NECivR 56.1(a). Plaintiff did include with his motion a notarized written statement from his wife in which she asserted that Defendant Gordon entered their residence "with the intentions to start an[] altercation and fight" with Plaintiff. (Filing 46 at CM/ECF pp. 3-4.) The court will consider this document.

In light of the above, the court adopts the following undisputed material facts, which are largely taken from Defendant Strong's and City Defendants' submissions and have not been properly disputed pursuant to the Federal and Local Rules.

## V. STATEMENT OF FACTS

1. City Defendants—Grant Gentile, Brock Gentile, Lopez, and Yanez—are police officers employed at all relevant times by the Omaha Police Department. (Filing 49-1 at CM/ECF p. 1, ¶ 2; Filing 49-2 at CM/ECF p. 1, ¶ 2; Filing 49-3 at CM/ECF p. 1, ¶ 2; Filing 49-4 at CM/ECF p. 1, ¶ 2.)

2. Defendant Strong has served as a correctional officer with the Douglas County Department of Corrections ("DCDC") and has worked at the Douglas County Correctional Center ("DCCC") since November 28, 2005. Defendant Strong is not a law enforcement officer and has never been a police officer with the Omaha Police Department.[3] (Filing 43-1 at CM/ECF pp. 1-2, ¶¶ 4, 5.)

3. On June 6, 2019, Omaha Police Department officers, including Defendant Grant Gentile, responded to a report of an assault at 4125 N. 61st Street, Omaha, Nebraska ("the residence" or "Plaintiff's residence"). (*Id.* at CM/ECF p. 3, ¶ 9, p. 12; Filing 49-2 at CM/ECF pp. 1-2, ¶¶ 3-4.)

4. At the residence, Defendant Grant Gentile interviewed the victim (Defendant Gordon) and percipient witnesses and filed a report. According to Defendant Gordon and witnesses, Plaintiff assaulted Defendant Gordon by striking him in the head with a hammer. Plaintiff fled the scene before police officers arrived, and Defendant Grant Gentile did not see or make contact with Plaintiff at any time that day or at any time thereafter. (Filing 43-1 at CM/ECF p. 3, ¶ 9, p. 12; Filing 49-2 at CM/ECF p. 2, ¶ 4.)

5. When Plaintiff was eventually located, he was confined to the locked-down psychiatric ward at the Omaha VA Hospital. (Filing 49-1 at CM/ECF p. 2, ¶ 7; Filing 49-2 at CM/ECF p. 3, ¶ 8; Filing 49-3 at CM/ECF p. 3, ¶ 9; Filing 49-4 at CM/ECF p. 2, ¶ 7.)

6. None of the City Defendants nor Defendant Strong had any contact with Plaintiff at the VA Hospital. (Filing 43-1 at CM/ECF pp. 1-2, ¶¶ 4-5; Filing 49-1 at CM/ECF p. 2, ¶ 6; Filing 49-2 at CM/ECF pp. 2-3, ¶ 7; Filing 49-3 at CM/ECF p. 2, ¶ 8; Filing 49-4 at CM/ECF p. 2, ¶ 6.)

---

[3] Plaintiff has erroneously labeled Defendant Strong as a police officer in the case caption.

7. Plaintiff was ultimately transferred to DCCC to serve a ninety-day sentence for a conviction in another criminal case. He began serving that sentence on June 21, 2019. (Filing 43-1 at CM/ECF p. 3, ¶ 8; Filing 49-1 at CM/ECF p. 2, ¶ 7; Filing 49-2 at CM/ECF p. 3, ¶ 8; Filing 49-3 at CM/ECF p. 3, ¶ 9; Filing 49-4 at CM/ECF p. 2, ¶ 7.)

8. On July 24, 2019, Defendant Yanez, a supervisor in the Omaha Police Department's Assault Unit, completed a warrantless arrest affidavit against Plaintiff for assault in the second degree, and he processed the necessary paperwork to add the assault charge to the list of pending charges against Plaintiff. (Filing 49-4 at CM/ECF p. 2, ¶¶ 4-5, pp. 12-16.)

9. On that same day, the Omaha Police Department sent DCDC a booking arrest report containing a short narrative of the events leading to Plaintiff being charged with assault in the second degree. The warrantless arrest affidavit was also sent. (Filing 43-1 at CM/ECF pp. 3-4, ¶¶ 8-9, 12, pp. 12-16.)

10. Upon receipt of that paperwork, Defendant Strong paper-booked[4] Plaintiff for the charge of assault in the second degree at DCCC, where Plaintiff was already confined and serving a sentence in another criminal case. Once Strong had

---

[4] Paper-booking is when a law enforcement agency submits a request to DCDC to add criminal charges related to an inmate who is already within DCCC. In connection with the request, the law enforcement agency faxes paperwork containing the inmate's name, basic identifying information, a listing of the additional charges, and a narrative about the additional charges. Upon receipt of this paperwork, a DCDC staff member enters the charges into the computer system and faxes the updated information back to the requesting law enforcement agency, which will update its information with the new charges. Afterwards, the inmate is brought to admissions and fingerprinted in relation to the paper-booking charges, and an arraignment date is set for the inmate to appear in court in relation to the paper-booked charges. (Filing 43-1 at CM/ECF p. 2, ¶¶ 6, 7.)

entered the new charge of assault in the second degree into DCDC's system, he faxed the updated information to the Omaha Police Department's Criminal Investigation Bureau. Strong was not aware of any facts indicating an absence of reasonable cause to charge Plaintiff with assault in the second degree. (*Id.* at CM/ECF pp. 2-4, ¶¶ 6, 8, 9, 12, p. 17.)

11. With respect to Plaintiff's paper-booking, Defendant Strong did not talk about the new assault charge with any of the City Defendants or with anyone who claimed to have talked with any of these officers. Nor did Strong talk with anyone from the Omaha Police Department or anyone who claimed to have knowledge of the events surrounding Plaintiff's paper-booked charge. (*Id.* at CM/ECF p. 4, ¶ 12.)

12. Defendant Strong did not see or talk to Plaintiff when completing the paper-booking, and he did not talk to Plaintiff about the new charge. Strong did not escort Plaintiff from his cell to the admissions area of the DCCC to be fingerprinted on the paper-booked charge, and he did not perform the fingerprinting. Strong had no personal interaction with Plaintiff and did not ever hear him explain or describe the events surrounding the paper-booked charge of assault in the second degree. (*Id.* at CM/ECF p. 4, ¶ 13.)

13. Aside from the information contained in the Omaha Police Department's paperwork, Defendant Strong never learned any of the details surrounding Plaintiff's arrest or the search or seizure of his property. The paperwork Strong had access to did not say anything about searching Plaintiff's properties or seizing his belongings; therefore, he had no knowledge about those events. Based on the information available to Strong, he had no reason to believe—and did not believe—that any aspect of Plaintiff's arrest or paper-booking violated any of Plaintiff's constitutional rights. Strong has never been told that the process of paper-booking a person already confined within DCCC is considered an unreasonable seizure in violation of the Fourth Amendment. (*Id.* at CM/ECF pp. 2, 4, ¶¶ 6, 12.)

14. At no point during the paper-booking process did Defendant Strong believe he was violating Plaintiff's right to be free from an unlawful arrest or an unreasonable search or seizure. Strong understood that Defendant Yanez attested to a warrantless arrest affidavit on July 24, 2019, and he knew that Plaintiff would be taken from DCCC to appear in court in relation to the new charge within a day or two of his paper-booking. (*Id.* at CM/ECF pp. 4-5, ¶ 14.)

15. Had prosecutors declined to pursue Plaintiff's paper-booked charge of assault in the second degree, paperwork indicating as much would have been sent to DCCC, and DCDC would have updated its records to show that the paper-booked charge was declined. (*Id.* at CM/ECF p. 3, ¶ 10.)

16. On July 26, 2019, two days after Plaintiff's paper-booking, Judge Vaughn of the County Court of Douglas County, Nebraska, found probable cause to detain Plaintiff on the paper-booked charge of assault in the second degree. (*Id.* at CM/ECF p. 4, ¶ 11, p. 18.) The court issued a Commitment in Default of Bail, ordering Plaintiff committed to DCCC, where he was already serving a sentence in another case. The court also allowed Plaintiff to give bail in the amount of ten percent of $100,000.00. (Filing 43-2 at CM/ECF p. 1, ¶ 3, p. 3.)

17. Plaintiff's criminal charge for assault in the second degree remains pending in the District Court of Douglas County, Nebraska, Case No. CR 19-3013. Plaintiff has been released on bail pending trial. *See* https://www.nebraska.gov/justice/case.cgi.[5] (*See also* Filing 52.)

---

[5] The court is entitled to take judicial notice of Nebraska state court records, available to this court online. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (court may take judicial notice of public records); *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (court "may take judicial notice of judicial opinions and public records"); *see also Oliveira-Coutinho v. Frakes*, No. 4:15CV3159, 2018 WL 10705069, at *1 n.1 (D. Neb. Feb. 15, 2018).

## VI.  DISCUSSION

City Defendants and Defendant Strong claim they are entitled to qualified immunity and to judgment on the merits on Plaintiff's unlawful arrest and unreasonable search and seizure 42 U.S.C. § 1983 claims.

### A.  Qualified Immunity

Qualified immunity shields government officials from suits for damages under § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019), *as amended* (Nov. 26, 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The immunity is an *immunity from suit*, not merely from liability." *Id.* (emphasis in original).

The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Jackson v. Stair*, 944 F.3d 704, 710 (8th Cir. 2019) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). If a plaintiff cannot satisfy both prongs, the defendant is entitled to qualified immunity. *See Correia v. Jones*, 943 F.3d 845, 847 (8th Cir. 2019); *Recca v. Pignotti*, 456 F. Supp. 3d 1154, 1161 (D. Neb. 2020), *aff'd sub nom. Recca v. Omaha Police Dep't*, No. 20-2560, 2021 WL 2285235 (8th Cir. June 4, 2021); *see also Davis v. Chase Cnty. Sch. Dist. No. 536*, No. 7:17-CV-5007, 2019 WL 1506690, at *4 (D. Neb. Apr. 5, 2019) ("To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right."). Courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

Qualified immunity is designed "to avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.

*District of Columbia v. Wesby*, ___ U.S. ___, ___, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations omitted).

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)); *see also White v. Pauly*, ___ U.S. ___, ___, 137 S. Ct. 548, 551-52 (2017) ("clearly established law should not be defined at a high level of generality" and "must be particularized to the facts of the case"; "While this Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks and citations omitted).

Especially in the Fourth Amendment context, "[t]he clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him" and "[t]he rule's contours must be so

12

well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wesby*, ___ U.S. at ___, 138 S. Ct. at 589 (internal quotations and citation omitted); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (specificity in defining clearly established law for qualified immunity purposes "is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts") (internal quotation marks and citations omitted).

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law. But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994)).

**B. Unlawful Arrest and Unreasonable Search and Seizure**

"The Fourth Amendment protects [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *Wesby*, ___ U.S. at ___, 138 S. Ct. at 585-86 (internal quotation marks and citations omitted). Similarly, a 42 U.S.C. § 1983 claim based on a search or seizure of property requires a plaintiff to demonstrate that a search or seizure occurred, and that the search or seizure was unreasonable. *Clark v. Clark*, 926 F.3d 972, 977 (8th Cir. 2019).

"In the wrongful arrest context, officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (internal quotation omitted). Thus, "the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause . . . that is, whether the officer

13

should have known that the arrest violated plaintiff's clearly established right." *Walker*, 414 F.3d at 992 (alteration in original) (internal quotation omitted); *see also Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011); *Copeland v. Locke*, 613 F.3d 875, 880 (8th Cir. 2010).

## C. City Defendants

### 1. Defendant Grant Gentile

The uncontroverted evidence establishes that Defendant Grant Gentile was the only City Defendant who responded to the report of the assault at Plaintiff's residence. However, Grant Gentile had no contact with Plaintiff as he had fled the residence before Grant Gentile arrived. Grant Gentile interviewed the victim (Defendant Gordon) and other percipient witnesses and filed a brief report; he had no further involvement in the investigation, charging decisions, or paper-booking of Plaintiff. Indeed, Plaintiff has not refuted Grant Gentile's declaration stating he did not have any direct or indirect contact with Plaintiff; did not arrest Plaintiff or issue a citation to Plaintiff; did not perform a search of Plaintiff's person, residence, vehicle, or property; did not seize Plaintiff's person or property; did not interrogate Plaintiff; and did not ever see or speak to Plaintiff. ([Filing 49-2 at CM/ECF pp. 2-3](Filing 49-2 at CM/ECF pp. 2-3), ¶ 7.)

Without personal involvement in Plaintiff's arrest or any search or seizure, Defendant Grant Gentile cannot be liable on Plaintiff's Fourth Amendment claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Deezia v. City of Lincoln*, 350 F. Supp. 3d 868, 881-82 (D. Neb. 2018) (two police officers standing on opposite corner of intersection from arrestee were not personally involved in his arrest as required for § 1983 action alleging false arrest in violation of the Fourth Amendment).

## 2. Defendant Yanez

Defendant Yanez, a supervisor in Omaha Police Department's Assault Unit, reviewed police reports and completed the paperwork necessary to add the assault charge to the list of pending charges against Plaintiff, who was already serving a sentence in another criminal case at DCCC. (Filing 49-4 at CM/ECF p. 2, ¶¶ 4-5, pp. 12-16.) Based on the police reports, Yanez completed a warrantless arrest affidavit against Plaintiff for assault in the second degree. (Filing 43-1 at CM/ECF pp. 14-15.) This affidavit stated that Yanez arrested[6] Plaintiff on July 24, 2019 for assault in the second degree based on the following facts: on June 6, 2019, City of Omaha police officers were called to Plaintiff's residence to investigate an assault, and that when they arrived at the residence, they met with witnesses and Defendant Gordon, who reported that Plaintiff had assaulted him with a hammer. (*Id.* at CM/ECF p. 14.) The affidavit noted that Defendant Gordon had injuries to his head, arm, and chest and was later treated at the hospital for his injuries. (*Id.*)

The uncontroverted evidence shows that there was arguable probable cause to arrest Plaintiff for assault in the second degree. According to the police reports of the incident, Defendant Gordon and Plaintiff had a verbal argument and then Plaintiff assaulted him with a hammer, resulting in injuries. (*Id.* at CM/ECF p. 12.) A witness who was interviewed on the scene confirmed that Plaintiff was the primary aggressor of the physical assault.[7] (*Id.* at CM/ECF p. 12.) Based on these reports, Yanez had an objectively reasonable basis to believe Plaintiff had committed the offense of assault in the second degree on June 6, 2019. *See Brinegar*, 338 U.S. at

---

[6] There is no evidence that Defendant Yanez physically arrested Plaintiff or interacted with him in anyway. (Filing 49-4 at CM/ECF p. 2, ¶ 5.)

[7] Although Plaintiff submitted a statement from his wife asserting that Defendant Gordon entered their residence "with the intentions to start an[] altercation and fight" with Plaintiff (filing 46 at CM/ECF pp. 3-4), she did not say that Plaintiff did not physically assault Defendant Gordon; she only stated that Defendant Gordon intended to start a fight with Plaintiff.

15

175; *Parish*, 606 F.3d at 486; *see also* Neb. Rev. Stat. § 28-309 (a person commits assault in the second degree if he intentionally or knowingly causes bodily injury to another with a dangerous instrument or recklessly causes serious bodily injury to another person with a dangerous instrument). Thus, Yanez is entitled to qualified immunity on Plaintiff's unlawful arrest claim.[8] *See Borgman*, 646 F.3d at 522-23; *Copeland*, 613 F.3d at 880; *Walker*, 414 F.3d at 992.

With respect to Plaintiff's unreasonable search and seizure claims, Plaintiff has presented no evidence to suggest that Defendant Yanez was involved in searching his residence or seizing his property. Plaintiff has not refuted Yanez's declaration stating he did not have any direct or indirect contact with Plaintiff; did not perform a search of Plaintiff's person, residence, vehicle, or property; did not seize Plaintiff's person or property; did not interrogate Plaintiff; and did not ever see or speak to Plaintiff. (Filing 49-4 at CM/ECF p. 2, ¶ 6.) Without personal involvement in the alleged constitutional violation, Defendant Yanez cannot be liable on Plaintiff's Fourth Amendment unreasonable search and seizure claims. *See Ashcroft*, 556 U.S. at 676; *Deezia*, 350 F. Supp. 3d at 881-82.

### 3. Defendant Lopez

Plaintiff has presented no evidence to suggest that Defendant Lopez was involved in arresting him, searching his residence, or seizing his property. Specifically, Plaintiff has not refuted Lopez's declaration stating he did not have any direct or indirect contact with Plaintiff; did not arrest Plaintiff or issue a citation to

---

[8] The undisputed evidence also indicates that Plaintiff did not suffer a deprivation of liberty as a result of the assault charge and arrest warrant. Indeed, it is undisputed that Plaintiff was already in custody in DCCC related to another criminal case when Defendant Yanez completed the arrest warrant and added the charge against him. *See United States v. Johnson*, 703 F.3d 464, 470 (8th Cir. 2013) ("Johnson is already incarcerated. His liberty is already deprived by virtue of a sentencing which gave him all the process the Constitution required. No new deprivation of liberty can be visited upon him by a proceeding that, at worst, leaves his term of imprisonment unchanged.") (internal citation omitted).

Plaintiff; did not perform a search of Plaintiff's person, residence, vehicle, or property; did not seize Plaintiff's person or property; did not interrogate Plaintiff; and did not ever see or speak to Plaintiff. (Filing 49-3 at CM/ECF p. 2, ¶ 8.) The uncontroverted facts show that Lopez's involvement in Plaintiff's case was limited to his duties processing paperwork in the Assault Unit. (*Id.* at CM/ECF p. 2, ¶ 7.) At all relevant times, Lopez was on "light duty status due to a back injury and assigned to a desk position" in the Assault Unit. (*Id.* at CM/ECF pp. 2-3, ¶ 4.) While on light duty, he "made absolutely no contact with suspects, defendants, inmates, or other persons in the street and, according to the OPD Policy and Procedures Manual, was not permitted to, and ***did not*** make, **any arrests whatsoever**." (*Id.* at CM/ECF p. 3, ¶ 4 (emphasis in original).) Without personal involvement in the alleged constitutional violation, Defendant Lopez cannot be liable on Plaintiff's Fourth Amendment claims. *See Ashcroft*, 556 U.S. at 676; *Deezia*, 350 F. Supp. 3d at 881-82.

### 4. Defendant Brock Gentile

Plaintiff has presented no evidence to suggest that Defendant Brock Gentile was involved in arresting him, searching his residence, or seizing his property. Specifically, Plaintiff has not refuted Brock Gentile's declaration stating he did not have any direct or indirect contact with Plaintiff; did not arrest Plaintiff or issue a citation to Plaintiff; did not perform a search of Plaintiff's person, residence, vehicle, or property; did not seize Plaintiff's person or property; did not interrogate Plaintiff; and did not ever see or speak to Plaintiff. (Filing 49-1 at CM/ECF p. 2, ¶ 6.) Without personal involvement in the alleged constitutional violation, Defendant Brock Gentile cannot be liable on Plaintiff's Fourth Amendment claims. *See Ashcroft*, 556 U.S. at 676; *Deezia*, 350 F. Supp. 3d at 881-82.

### D. Defendant Strong

As an initial matter, contrary to Plaintiff's allegations in the Amended Complaint, Defendant Strong has never been a City of Omaha police officer. In

addition, Strong's job duties as a correctional officer at DCCC do not take him outside of DCCC. (Filing 43-1 at CM/ECF pp. 1-2, ¶ 4.) Plaintiff has not refuted Strong's declaration stating he did not search Plaintiff's residence, or any other location associated with Plaintiff; did not seize any of Plaintiff's property; did not have any knowledge of the details surrounding Plaintiff's arrest or the search or seizure of Plaintiff's property; and had no role in arresting Plaintiff or otherwise taking Plaintiff into custody. (*Id.* at CM/ECF pp. 1-2, ¶¶ 3, 5.)

The evidence is undisputed that Strong's only involvement with Plaintiff was paper-booking him on July 24, 2019. (*Id.* at CM/ECF p. 2, ¶¶ 5-6.) Plaintiff has not refuted Strong's declaration that he relied exclusively on the paperwork sent to DCDC by the Omaha Police Department to initiate Plaintiff's paper-booking, and that he was unaware from that paperwork of any facts indicating an absence of reasonable cause to charge Plaintiff with assault in the second degree or that Plaintiff's arrest was unconstitutional. (*Id.* at CM/ECF pp. 3-4, ¶¶ 9, 12.) Strong also knew from the paperwork that Plaintiff would soon be arraigned on the new charge. (*Id.* at CM/ECF pp. 4-5, ¶14.) *Cf. Dry v. United States*, 235 F.3d 1249, 1259 (10th Cir. 2000) ("Absent any objectively apparent 'lack of a basis for a detention which should arouse suspicion, a jailer cannot be expected to assume the mantle of a magistrate to determine the probable cause for an arrest.'") (citations omitted); *Wood v. Worachek*, 618 F.2d 1225, 1231 (7th Cir. 1980) ("Generally, a jailer is liable for the illegal detention of an inmate when he unreasonably detains the inmate for arraignment or release, or possesses an affirmative knowledge of the illegality of the arrest. But if the errors upon which liability is asserted take place beyond the scope of his responsibility, he cannot be found liable where he has acted reasonably and in good faith."). The paperwork sent to DCDC by the Omaha Police Department to initiate Plaintiff's paper-booking at DCCC did not mention anything about Plaintiff's properties being searched or his belongings seized. Thus, Strong had no knowledge of those events. (*Id.* at CM/ECF p. 4, ¶ 12.)

In the case at bar, the uncontroverted facts demonstrate that Defendant Strong acted reasonably and in good faith with respect to the paper-booking of Plaintiff and

18

without an affirmative knowledge that Plaintiff's arrest was unlawful or that his constitutional rights were violated by an unreasonable search or seizure.

Even assuming, however, that Defendant Strong's paper-booking of Plaintiff violated Plaintiff's Fourth Amendment rights, he is entitled to qualified immunity. As of 2019, there was no law clearly establishing that paper-booking Plaintiff under the circumstances in this case was unconstitutional. As Strong states in his declaration, he "had no reason to believe—and [he] did not believe—that any aspect of [Plaintiff's] arrest or his paper-booking while already incarcerated within DCCC violated any of Plaintiff's constitutional rights." (*Id.* at CM/ECF p. 4, ¶ 12.) Defendant Strong is thus entitled to qualified immunity.

### E. Plaintiff's Motion for Summary Judgment

In light of the court's resolution of the summary judgment motions in favor of City Defendants and Defendant Strong, Plaintiff's Motion for Summary Judgment (filing 46) is denied.

### VII. MOTIONS FOR DEFAULT JUDGMENT

Plaintiff alleges that Defendant Gordon—the defaulting party—acted jointly with City Defendants and Defendant Strong to have Plaintiff unlawfully arrested. As the court noted in its earlier Memorandum and Order:

> "When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citing [*Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 554 (1872)]). "To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party." *Id.*

(Filing 38 at CM/ECF p. 2.) In light of the court's resolution of the summary judgment motions in favor of City Defendants and Defendant Strong and against

Plaintiff, the case will also be dismissed as to Defendant Gordon. *See Angelo Iafrate Const., LLC*, 370 F.3d at 722. Therefore, Plaintiff's motions for default judgment (filings 32 & 35) against Defendant Gordon are denied.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Summary Judgment (filing 46) is denied.

2. City Defendants' Motion for Summary Judgment (filing 48) and Defendant Strong's Motion for Summary Judgment (filing 42) are granted.

3. Plaintiff's motions for default judgment (filings 32 & 35) are denied.

4. This case is dismissed with prejudice as to all Defendants.

5. A separate judgment will be entered.

Dated this 30th day of July, 2021.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge